UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

MARISSA B.,[1]

Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

Defendant.

**DECISION AND ORDER**

6:25-cv-6039-JJM

Plaintiff brings this action pursuant to 42 U.S.C. §§405(g) and 1383(c)(3) to review the final determination of the Commissioner of Social Security that she was not disabled. Before the court are the parties' cross-motions for judgment on the pleadings [8, 14].[2] The parties have consented to my jurisdiction [16]. Having reviewed their submissions [8, 14, 15], this action is remanded to the Commissioner for further proceedings consistent with this Decision and Order.

**BACKGROUND**

The parties' familiarity with the 867-page administrative record [5] is presumed. On April 29, 2022 and May 16, 2022, plaintiff filed applications for supplemental security income and disability insurance benefits, respectively. Administrative Record [5] at 17, 109-10. In both, she asserted an onset date of January 1, 2020. Id. at 17, 74, 95. She alleged the disabling

1 In accordance with the guidance from the Committee on Court Administration and Case Management of the Judicial Conference of the United States, which was adopted by the Western District of New York on November 18, 2020 in order to better protect personal and medical information of non-governmental parties, this Decision and Order will identify the plaintiff by first name and last initial.

2 Bracketed references are to the CM/ECF docket entries. Page references to the administrative record are to the Bates numbering. All other page references are to the CM/ECF pagination.

conditions of bipolar disorder, depression, attention disorder, dissociative identity disorder, post-traumatic stress disorder ("PTSD"), anxiety, headaches, carpal tunnel, chronic back pain, addiction, and memory problems. Id. at 74, 95. Plaintiff's claim was initially denied. Id. at 92, 108.

### A. The Hearing

On December 15, 2023, Administrative Law Judge ("ALJ") Kate Dana conducted a telephonic hearing. Id. at 45-72. Plaintiff was represented by an attorney. Id. at 47. At the hearing, plaintiff testified that she was 37 years old and lived with her adult daughter. Id. at 52. Plaintiff had a driver's license and drove twice a week, with difficulty. Id. at 53. She has an associate's degree in medical assisting. Id. She was last employed at McDonald's, and left that job due to back pain, hand pain, and migraines. Id. at 53-54. From 2014 to 2017, she worked as a childcare aide. Id. at 54. She suffered from "severe mental illness" and was taking prescribed medication. Id. at 56-57. She was also on medication for migraines and back pain. Id. at 59. She testified that she did little but eat, sit, and lie down during the day. Id. at 58. Her daughter took care of the household chores. Id. at 61.

A vocational expert testified that an individual of plaintiff's age, education, and vocational background who was limited to light work with certain exertional, postural, environmental, and mental accommodations could not perform plaintiff's past relevant work as a daycare worker. Id. at 65-66. However, the vocational expert testified that such a person could perform other jobs existing in the national economy. Id. at 66. The vocational expert testified that off-task time of greater than 10% or absenteeism greater than eight hours per month would be preclusive of competitive work. Id. at 71.

**B. Evidence of Record**

In a self-authored function report, plaintiff wrote that she could not work due to a combination of headaches, back pain, and hand/wrist pain. Id. at 314. In addition, her “mental illness”, which had required inpatient treatment at times, rendered her unable to maintain any responsibilities. Id. She also had a history of addiction. Id. She was able to make meals and do laundry for herself and her daughter. Id. at 315. She would care for her pets, dress, bathe, groom, and shop, but with some difficulty due to her hands. Id. at 315-17. She could walk 200 feet at a time, can pay attention for 10 minutes, can follow written instructions “pretty well”, follows spoken instructions “terribly”, gets along with authority figures “pretty well”, can handle stress “ok I guess,” and handles changes in routine “not well”. Id. at 319.

The record included treatment records from Family Services, Reach Project, psychiatric therapy with Arnot Health and Cerio Counseling, and of various hospitalizations and/or emergency room visits. *See* id. at 27-30. While none of these providers offered a medical opinion, the records contained contemporaneous examination notes. *See* id. Mental health examination results during the relevant time period ranged from poor (id. at 410, 852, 854, 855, 863, 864) to largely unremarkable (471, 605, 614, 673, 678, 851, 865).

On September 21, 2022, Justine Magurno, M.D. performed a consultative medical examination of plaintiff. Id. at 683. Plaintiff complained of low back pain, bilateral wrist and hand pain, and chronic headaches. Id. She smokes cigarettes and uses marijuana daily. Id. She reportedly discontinued her previous alcohol and heroin use in 2017 and 2015, respectively. Id. at 684. She needed “some help” at home, but cooked daily and cleaned within her physical limits. Id. X-rays of the lumbar spine were unremarkable. Id. at 686.

On examination, the claimant appeared to be in no acute distress, displaying a normal gait, no use of an assistive device, and the ability to stand on heels and toes. Id. at 684. She had reduced squat and decreased range of motion of the cervical spine and lumbar spine. Id. at 684-85. She had somewhat decreased range of motion in her knees. Id. at 685. Dr. Magurno opined that plaintiff would have "moderate" limitations in squatting, bending, lifting, and carrying; "mild" limitations in reaching, pushing, pulling, fine motor tasks, standing, and walking; and would have "[d]ifficulty with a normal schedule" due to headaches. Id. at 686.

ALJ Dana found Dr. Magurno's opinion "persuasive overall", at least with respect to the exertional and postural limitations, as being supported by the examination findings and treating records. Id. at 36. However, she found the portion of the opinion regarding "difficulty with normal schedule due to headaches" only "persuasive in part" as it was "vague". Id. Nonetheless, she agreed that some restrictions due to migraine headaches were warranted, and assessed plaintiff with various environmental limitations. Id.

On September 12, 2022, psychological consultant T. Linden, Ph.D. reviewed the record and opined that plaintiff's mental health impairments would cause moderate limitations in the areas of interacting with others and concentrating, persisting, and maintaining pace; and mild limitations in the areas of understanding, remembering, and applying information; and adapting or managing oneself. Id. at 79-80. Nonetheless, Dr. Linden opined that plaintiff could understand, remember, and carry out "detailed, non-complex" instructions and work procedures, could relate appropriately to coworkers and supervisors, could adapt to changes and use appropriate judgment in such an environment. Id. at 90. On April 14, 2023, psychiatric consultant P. Fernandez affirmed those findings. Id. at 125-28.

ALJ Dana found the psychological consultants' opinions to be "persuasive", in that they were supported by their explanations and consistent with the record which showed mental status examinations that were occasionally abnormal as to mood but otherwise within normal limits. Id. at 33-34.

On September 29, 2022, medical consultant S. Siddiqui, M.D. reviewed the medical evidence and Dr. Magurno's assessment and opined that plaintiff was capable of performing light work with certain postural and environmental limitations. Id. at 81-85. Medical Consultant S. Gandhi, M.D. affirmed these conclusions on November 8, 2023. Id. at 122-25. ALJ Dana found the medical consultants' opinions "persuasive". Id. at 33.

Primary care provider Wafaa Rizk, M.D., provided a November 8, 2023 questionnaire, which indicated that plaintiff was being treated for migraine with aura, and that such condition would diminish plaintiff's concentration and work pace. Id. at 836-37.[3] Dr. Rizk opined that plaintiff would be off task for more than one-third of the work day, and that she would miss more than four days per month. Id. at 837. Plaintiff could sit for four of eight hours during the day, and she would need to change positions every 30 minutes. Id. at 838. She would be limited to occasional (one-third of the day) lifting, reaching, and handling. Id.

ALJ Dana found Dr. Rizk's opinion "persuasive in part" with respect to the lifting, carrying, handling, reaching, standing, and walking limitations as being supported by the corresponding findings and consistent with the record. Id. at 35-36. However, she concluded that the opinions as to off-task time and absenteeism were unsupported and inconsistent with mental

[3] At least, my assumption is that the limitations opined by Dr. Rizk are associated with migraines, since that is the only condition the form mentions. Notably, the space to indicate "the conditions and diagnoses . . . for which you treat [plaintiff]" was left blank. Id. at 836.

status exam findings showing progress in treatment as well as her reported activities of daily living. Id. at 36.

**C. The ALJ's Decision**

On April 2, 2024, ALJ Dana issued a decision denying plaintiff's claim. Id. at 17-39. She found that plaintiff had the following severe impairments: lumbar degenerative disc disease with radiculopathy, sacroiliitis, chronic pain syndrome, migraine headache disorder, carpal tunnel syndrome, obesity, bipolar disorder, attention deficit hyperactivity disorder ("ADHD"), and PTSD. Id. at 20. She found that plaintiff had "moderate" limitations in all four broad areas of mental functioning. Id. at 23.

ALJ Dana found that plaintiff retained the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R §416.967(b) with certain exertional, postural, and environmental accommodations. Id. at 24. Plaintiff could understand, remember, and carry out "simple instructions and tasks". Id. She would need to avoid all exposure to hazards, including moving mechanical parts, unprotected heights, or more than a "moderate" noise level. Id. She could "frequently" interact with supervisors and coworkers, and "occasionally" interact with the general public. Id. She could tolerate occasional changes in a routine work setting. Id.

ALJ Dana determined that, considering plaintiff's age, work experience, and RFC, there were jobs that exist in significant numbers in the national economy that she could perform. Id. at 37-39. Accordingly, she concluded that plaintiff was not disabled. Id. at 39.

## DISCUSSION

### A. Standard of Review

"A district court may set aside the Commissioner's determination that a claimant is not disabled only if the factual findings are not supported by 'substantial evidence' or if the decision is based on legal error." Shaw v. Chater, 221 F.3d 126, 131 (2d Cir. 2000) (*quoting* 42 U.S.C. §405(g)). Substantial evidence is that which a "reasonable mind might accept as adequate to support a conclusion". Consolidated Edison Co. of New York, Inc. v. NLRB, 305 U.S. 197, 229 (1938); *see also* Biestek v. Berryhill, 587 U.S. 97, 103 (2019); Colgan v. Kijakazi, 22 F.4th 353, 359 (2d Cir. 2022).

An adjudicator determining a claim for Social Security benefits employs a five-step sequential process. *See* Shaw, 221 F.3d at 132; 20 C.F.R. §§404.1520, 416.920. The plaintiff bears the burden with respect to steps one through four, while the Commissioner has the burden at step five. Talavera v. Astrue, 697 F.3d 145, 151 (2d. Cir. 2012).

### B. Did the ALJ properly consider plaintiff's psychiatric hospitalizations?

Plaintiff argues that ALJ Dana erred by finding that she could work consistently without any limitation. [8-1] at 3, 10-15. In particular, plaintiff points to her record of psychiatric hospitalizations from 2019 to mid-2021 – including an inpatient admission of one week and another of (reportedly) three weeks – as conclusive evidence that would be unable to meet the absentee and time-off-task requirements of competitive work. Id. In the alternative, plaintiff argues that ALJ Dana failed to consider a closed period of benefits for the time she was in the emergency department or admitted to the psychiatric unit. Id. at 15. I agree with plaintiff to the extent that remand for further development is warranted.

On appeal, "[t]he relevant inquiry is whether the ALJ applied the correct legal standards and whether [his] determination is supported by substantial evidence". Cichocki v. Astrue, 729 F.3d 172, 177 (2d Cir. 2013). "That is to say, the findings of the Commissioner as to any fact, if supported by substantial evidence, are conclusive." Zacharopoulos v. Saul, 516 F. Supp. 3d 211, 220 (E.D.N.Y. 2021) (*citing* 42 U.S.C. §405(g)). Merely pointing to evidence, even substantial evidence, that might have supported a more restrictive RFC is insufficient. *See* Bonet ex rel. T.B. v. Colvin, 523 F. App'x 58, 59 (2d Cir. 2013) ("whether there is substantial evidence supporting the appellant's view is not the question here; rather, we must decide whether substantial evidence supports the ALJ's decision"). However, remand may be appropriate where the ALJ has "mischaracterize[d]" or "cherry-pick[ed]" evidence to support her conclusion. *See* Lisa N. v. Commissioner of Social Security, 2026 WL 828761, *5 (W.D.N.Y. 2026).

Here, ALJ Dana addressed plaintiff's emergency room visits, but she characterized them as "isolated exacerbations in the context of substance use, gaps in medication management, and social stressors". [5] at 31. She further found that plaintiff appeared to have been restored to good health by those hospitalizations, based upon plaintiff's largely normal mental status examination results upon discharge. Id. She ultimately concluded that plaintiff had shown overall improvement in conjunction with treatment at Cerio Counseling. Id. at 32.

I am concerned by ALJ Dana's somewhat casual dismissal of evidence of rather serious psychiatric events. During one such event within the relevant period, emergency services responded to plaintiff's home after reports that she had not been seen for three days. Id. at 421. There, she was found "covered in stool" and combative. Id. On another occasion, plaintiff was brought to the hospital by her sister on the grounds that she was disheveled and engaging in erratic behavior for a week after experiencing a death in the family. Id. at 434, 509. At the

hospital, she was reportedly experiencing "auditory and visual hallucinations", walking the hallways naked, and wandering into other patient's rooms. Id. at 434, 439, 440, 462. She was reportedly "so psychotic that she was practically nonsensical in her presentation", making statements such as that she could "smell her father". Id. at 475.

While substance abuse may have played a role in some of these events, it is error for an ALJ to "conflate[] the substance abuse analysis with the disability determination itself". Jessica B. v. Commissioner of Social Security, 2022 WL 3584365, *4 (W.D.N.Y. 2022) (citation omitted). That is, while a person cannot ultimately be found disabled as the result of symptoms caused by drug addiction (*see* 42 U.S.C. §1382c(a)(3)(J)), the ALJ must first determine whether the mental limitations were disabling, regardless of cause. *See* 20 C.F.R. §§404.1535, 416.935; Walter R. v. Commissioner of Social Security, 2025 WL 395929, *5 (W.D.N.Y. 2025); Jessica B., 2022 WL 3584365 at *3-4. "When substance abuse 'cannot be parsed out from mental health limitations, substance abuse cannot be held material to a finding of disability'." Christopher G. v. Commissioner of Social Security, 2024 WL 4308311, *5 (W.D.N.Y. 2024) (citations omitted).

Here, ALJ Dana's analysis suggests that she may have run afoul of this rule. *See* Jessica B., 2022 WL 3584365 at *5 ("the ALJ's conclusion that plaintiff's periods of exacerbated symptoms corresponded with periods of documented substance use strongly suggests that, in assessing disability in the first instance based on the entirety of plaintiff's symptoms, the ALJ 'improperly minimized or excluded symptoms because they may have been caused by substance abuse'"). Moreover, evidence suggests that at least some of these incidents were not the result of drug use. *See* id. at 434 (no drugs found); 439 (urine test indicated only marijuana use and that plaintiff was taking her prescribed anti-opioid medication).

Further complicating matters is the lack of any opinion evidence regarding plaintiff's mental limitations from any examining source. The Commissioner's unexplained decision not to obtain a psychiatric consultative examination is curious in light of plaintiff's recurring and serious mental health symptomology, as well as the fact the agency consultants indicated that one was needed. *See* id. at 78. The courts have long advised caution when dealing with mental health symptoms, which often wax and wane over time. *See generally* Estrella v. Berryhill, 925 F.3d 90, 97 (2d Cir. 2019) ("[c]ycles of improvement and debilitating symptoms of mental illness are a common occurrence, and in such circumstances it is error for an ALJ to pick out a few isolated instances of improvement over a period of months or years and to treat them as a basis for concluding a claimant is capable of working").

Under these circumstances, remand is appropriate for further development of the record regarding plaintiff's ability to work consistently, to include procuring opinion evidence from at least an examining source, if not a treating source. *See* Plisko v. Commissioner of Social Security, 2020 WL 428059, *5 (W.D.N.Y. 2020) (remanding where "there [was] no professional medical or psychiatric opinion in the record linking the medical evidence . . . to her functional abilities").

**C. Other Arguments**

Plaintiff makes further arguments, including that ALJ Dana: (1) failed to properly address Dr. Rizk's opinion regarding the need to change positions ([8-1] at 3, 16-17); (2) failed to explain her findings regarding interaction with supervisors and co-workers and failed to include sufficient limitations regarding interaction with others (id. at 18-19); (3) failed to properly assess the medical opinions and records (id. at 19-20); and (4) failed to properly account for plaintiff's headaches/migraines (id. at 21-22).

These remaining issues may not have, by themselves, necessitated remand. However, as remand is ordered on other grounds, the ALJ is directed to ensure that such issues are fully considered and addressed in any subsequent proceedings. *See*, *e.g.*, Pacheco v. Saul, 2020 WL 113702, *8 (D. Conn. 2020) ("[o]n remand, the Commissioner shall address the other claims of error not discussed herein").

**CONCLUSION**

For these reasons, plaintiff's motion for judgment on the pleadings [8] is granted to the extent it seeks vacatur and remand, the Commissioner's motion for judgment on the pleadings [14] is denied, and this matter is remanded to the Commissioner for further administrative proceedings consistent with this opinion.

**SO ORDERED**.

Dated: September 30, 2026

/s/ Jeremiah J. McCarthy
JEREMIAH J. McCARTHY
United States Magistrate Judge